Revised October 26, 1996

**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 98-50268

_____

GEORGE CORDOVA,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, Director,
Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

October 6, 1998

Before HIGGINBOTHAM, DAVIS, and DENNIS, Circuit Judges.

DAVIS, Circuit Judge:

George Cordova, a Texas death row inmate, seeks a certificate of probable cause to appeal the district court's dismissal of his habeas petition. We deny the certificate.

I.

Cordova was first convicted for the capital murder of Jose M. Hernandez and sentenced to death in 1982. The Texas Court of Criminal Appeals affirmed Cordova's conviction and sentence on direct appeal. Cordova v. State, 698 S.W.2d 107 (Tex. Crim. App. 1985), cert. denied, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352

(1986).  This court, however, overturned Cordova's conviction because the trial court failed to instruct the jury on lesser included offenses.  Cordova v. Lynaugh, 838 F.2d 764 (5th Cir. 1988), cert. denied, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988).

Cordova was retried in June 1989 and was again convicted of capital murder.  The jury affirmatively answered the two special issues submitted under former article 37.071(b) of the Texas Code of Criminal Procedure, and the trial court sentenced Cordova to death by lethal injection.  The Court of Criminal Appeals affirmed Cordova's conviction and sentence, Cordova v. State, No. 70,926 (Tex. Crim. App., April 27, 1994), and the Supreme Court denied Cordova's petition for writ of certiorari.  Cordova v. Texas, 513 U.S. 1020, 115 S.Ct. 585, 130 L.Ed.2d 499 (1994).

Cordova filed a state habeas application, which he amended twice.  The trial court, following an evidentiary hearing on Cordova's application, recommended that Cordova's habeas petition be denied.  The Texas Court of Criminal Appeals denied all relief in October 1995.  Ex parte Cordova, No. 16,148-02 (Tex. Crim. App., October 18, 1995).  Cordova then filed his federal petition for habeas relief.  The district court denied Cordova's petition and also denied a certificate of probable cause.  Cordova v. Johnson, 993 F.Supp. 473 (W.D. TX 1998).  This appeal followed.

II.

The State established essentially the same facts in the second

trial as we reported in our initial opinion. See Cordova v. Lynaugh, 838 F.2d 764 (5th cir. 1988). In summary, at approximately 2:30 a.m. on August 4, 1979, George Cordova, Manuel Villanueva and two other men approached Hernandez and Cynthia West, who were parked in a well-lit parking lot. West saw Cordova strike Hernandez with a tire iron and Villanueva attack Hernandez with a knife. Cordova dragged West out of the car and forced her to a nearby wooded area where he, Villanueva, and a third man raped her. After the attackers left, West returned to the parking lot and discovered Hernandez lying dead in a pool of blood.

### III.

The standard for granting a certificate of probable cause is whether Cordova has made a substantial showing that he was denied a federal right. Barefoot v. Estelle, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). The Anti-terrorism and Effective Death Penalty Act ("AEDPA") is not applicable. After careful consideration of the record, the briefs of the parties and oral argument, and for the reasons set forth below, we deny the certificate.

### A.

Cordova argues first that the trial court's jury instructions given during the punishment phase of his trial prevented the jury from considering important mitigating evidence. Cordova predicates this argument on the following charge, which the trial court gave in the punishment phase of the trial:

"You are instructed that the law of the parties, on which you were instructed at the first phase of the trial, has no applicability to this phase of the trial. In answering the Special Issues, you will consider only such evidence, if any, as you may believe relevant to the conduct, if any, of the defendant at the time of the offense, and to his future conduct." (emphasis added)

Cordova contends that the language emphasized in the above charge precluded the jury from considering his troubled background and family history and the fact that Villanueva--his codefendant and the triggerman--received a lighter sentence. He reasons that the jury would reasonably conclude that it could not consider that evidence because it is not evidence of his conduct at the time of the offense.

We disagree. Giving the charge a common sense interpretation in light of all that transpired at trial, we are satisfied that there is no "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). In context, it is clear that the court gave the challenged instruction to explain that the "law of the parties,"[1] which applied during the guilt phase of the trial, did not apply to the jury's sentencing determination.

_____

[1] The trial court gave the following "law of the parties" charge: "A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense."

4

The challenged instruction supplemented the court's more general instruction to the jury that it could consider

> all of the evidence submitted to you in the trial of the first part of this case wherein you were called upon to determine the guilt or innocence of the defendant, and all of the evidence, if any, admitted before you in the second part of the trial wherein you are called upon to determine the special issues hereby submitted to you.

The challenged instruction was obviously necessary to make it clear that one of the legal principles applicable to the guilt phase of the trial--the law of the parties--had no application in the punishment phase. A reasonable jury, considering the court's instruction as a whole, would not have interpreted it to preclude them from considering Cordova's family background or the life sentence his co-conspirator received. See Lauti v. Johnson, 102 F.3d 166, 169-70 (5th Cir. 1996); Drinkard v. Johnson, 97 F.3d 751, 757-64 (5th Cir. 1996).

Moreover, the record demonstrates that Cordova's counsel understood that the jury could consider these mitigating factors. During closing argument, Cordova's counsel went through the juvenile case report and highlighted Cordova's difficult childhood. Counsel also outlined the fact that codefendant, Villanueva, pleaded guilty and that the state "saved his life." Defense counsel drove this point home:

> Where is the justice when the man who drives that cold steel shaft into Jose Hernandez's neck is not before you or any other jury and the state says "we are going to save his life." And they bring the person to you who did not do that act, and tells you, "we want him to be dead."

5

Thus, when the instructions are considered in their entirety, in the context of the entire trial, they did not preclude the jury from considering the mitigating evidence proffered by Cordova.

B.

Cordova argues next that the trial court violated <u>Penry v. Lynaugh</u>, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), when it refused to give a specific instruction to the jury authorizing it to consider as a mitigating factor that Villanueva rather than Cordova was the triggerman and that Villanueva received a life sentence.

To the extent that Cordova contends that the jury was prevented from considering as mitigating evidence that he was not the triggerman, this argument is foreclosed by our cases. The Texas capital sentencing scheme allows the jury to give adequate consideration to evidence that the defendant was not the triggerman. <u>See</u> <u>Nichols v. Scott</u>, 69 F.3d 1255, 1267-68 (5th Cir. 1995); <u>Stewart v. Collins</u>, 978 F.2d 199, 201 (5th Cir. 1992); <u>Drew v. Collins</u>, 964 F.2d 411, 420-21 (5th Cir. 1992).

Cordova also argues that the jury was prevented under the court's instruction from considering "that his triggerman/codefendant received a lesser life sentence." This court has held that a capital defendant is not entitled to introduce evidence of a codefendant's sentence. In <u>Brogdon v. Blackburn</u>, 790 F.2d 1164 (5th Cir. 1986), we held that the trial court did not err in excluding evidence of a co-defendant's

sentence because that sentence was irrelevant to a defendant's "'character, prior record, or the circumstances of the offense.'" Id. at 1169 (quoting Lockett v. Ohio, 438 U.S. 586, 600 n.7, 98 S.Ct. 2954, 2962 n.7, 57 L.Ed.2d 973 (1978). See also Penry, 492 U.S. at 328, 109 S.Ct. at 2952.

Cordova argues that Brogdon does not control because in that case we dealt with the admissibility of evidence of a codefendant's sentence whereas in his case the evidence was admitted. He argues that because the evidence of Villanueva's life sentence was admitted during the punishment phase, the jury was entitled to give effect to that evidence.

Cordova has failed to present any authority in support of his argument that the court must give a Penry instruction directing the jury to consider constitutionally irrelevant mitigating evidence. We decline to announce such a rule. To accept Cordova's position would eviscerate Penry by requiring a special instruction regardless of the nature of the evidence. The defendant has no right to receive a special instruction directing the jury to consider certain mitigating evidence unless the evidence is constitutionally mitigating. The evidence of Villanueva's sentence had no relevance to Cordova's background or character or to the circumstances of the offense that militate against imposing a death sentence. Penry, 492 U.S. at 318, 109 S.Ct. at 2946. No Penry instruction was required.

Cordova has failed to make a substantial showing of the denial

7

of a federally guaranteed right.  We deny a certificate of probable cause.  We also vacate the stay of execution.